## CONSTRUCTION OF THE WORD "PAROCHIAL" AS APPLIED TO CATHOLIC SCHOOLS.

Common Pleas Court of Hamilton County.

THE CITY OF CINCINNATI, ETC. v. THE CINCINNATI TRACTION COMPANY, ETC.

Decided, November 28, 1921.

*Schools—Reduced Street Car Fare Ordered—For Pupils of the "Public" and "Parochial" Schools—Other Catholic Schools Held to be Included—Words and Phrases.*

An ordinance requiring that children between the ages of ten and eighteen years, attending regularly established "public or parochial" schools, shall be carried on the traction lines to and from such schools for a five-cent fare, must be construed in view of its beneficient purpose to include children in attendance at the academies and the convent schools and high schools maintained by the Catholic church.

*Saul Zielonka,* for the motion.

*Miller Outcalt, A. C. Cassatt* and *Joseph Wilby,* for defendants.

DARBY, J.

A motion for a temporary restraining order was submitted upon evidence and briefs. The petition seeks to require the defendant to furnish and supply a reduced rate street car fare to school children attending certain so-called convent schools and high schools operated in this city by the Roman Catholic Church.

The ordinance of the city which is involved is No. 142—1921, the third section of which provides:

"The rates of fare for children ten (10) years of age or over and under eighteen (18) years of age, attending the public and parochial schools, including high schools, shall be five (5) cents, under rules prescribed by the company and approved by the director of street railroads, providing that such rate of fare shall be effective only by the sale of tickets and making such further provisions as may be necessary to limit the use of such reduced rate tickets to *bona fide* school children going to and from the regularly established public or parochial schools for the purpose of attending school."

The testimony offered on the hearing tended to show that the convent schools referred to have courses of study practically the same as elementary, intermediate and high school courses in the public schools of the city; that the attendance at such schools is accepted in lieu of attendance at the public schools; that such schools are auxiliary to the so-called parochial schools; that they are maintained in part by tuitions in the nature of donations and in part by contribution from the parishes; that such convent schools are attended by children at large, that is, from any of the parishes of the city of Cincinnati; that the Catholic church has a policy of separating the youth after their arrival at twelve or thirteen years of age and of giving the girls, high school training in the convent schools, and the boys their high school training in certain designated high schools conducted by the Catholic church.

There was further testimony to the effect that the term "parochial schools," as used and understood by the Catholic people or congregations is synonomous with Catholic schools, and includes the convent schools referred to; also, that said convent schools are not conducted for profit, but are supported and maintained "by the public at large, the Catholic public at large and serve the public at large, whether Catholic or non-Catholic and are not maintained for private gain in any sense of the word."

It was conceded on the trial that the generally accepted meaning of the word parochial is, "of, or pertaining to a parish." But the testimony given by the witness, Dr. Nau, is to the effect that the word is used and understood in the Catholic church and among Catholics as having a broader sense than that, when applied to schools, and that it is understood by them to mean "a school conducted under or by the Catholic church."

The question in the case is as to the meaning of the council in passing the ordinance referred to. The ordinance fixes the rate referred to for children of the ages designated, "attending the public and parochial schools, including high schools." Did council in the use of this language intend that this beneficent law should be limited in its operation to such children attending the parochial or parish schools, strictly speaking, or was it the

intention to include children attending the schools in question, which are said to be auxiliary, or aids to the parochial schools? The court has no power or inclination to extend the effect of the language referred to beyond the intention of the legislative body. The only cases referred to as throwing light upon the construction of such ordinances, justify a broad construction of their terms. *In re Public Service Rwy. Co.*, Public Utilities Rep., 1916a, 437; *Oklahoma Ry. Co.* v. *St. Joseph's Parochial School*, 127 Pac. Rep., 1087. *In re Lincoln Traction Co.*, Public Utilities Utilities Rep., 1920a, 328.

The Legislature of this state has employed this term "parochial school," in a manner indicating something more than a local elementary or intermediate school.

It is provided (General Code, Section 7763, 109 O. L., 378) that—

"Compulsory school age shall mean six to eighteen years of age, except," etc.—;
also, (General Code, Section 7762-6), that—

"Every child of compulsory school age who is not employed on an age and schooling certificate, *shall* attend a public, private or parochial school," etc.;
also (General Code, Section 7763), that—

"Every parent * * * having charge of any child of compulsory school age who is not employed on an age and schooling certificate, *must* send such child to a public, private or parochial school for the full time the school attended is in session," etc.

The evidence (and general knowledge) is that in the parish schools, strictly speaking, elementary and intermediate courses are taught, and that the high school courses are taught at the convents mentioned and high schools maintained by the Catholic church. It is required that children above the ages for elementary and intermediate grades shall go to school under the statutes referred to. All children of compulsory school age may go to parochial schools, and by the plainest meaning of the Legislature they are not required at any time during their school age to go to public or private schools, but may go to parochial

schools. The statute plainly forbids the suggestion that after a child of compulsory school age has completed the course in elementary and intermediate grades in the parochial school, he must then go to some other school public or private. If the term "parochial school" is to be limited to mean a local parish school, then the inconsistency would arise of requiring children to continue until eighteen years old in the parish schools, though they had years before that age completed the full course of instruction there. The Legislature by the acts referred to had something more in mind in the use of the term "parochial school" than the mere local elementary and intermediate school. It may be that the Legislature did not have in mind that parochial and Catholic school were synonomous terms, but it surely did mean by the use of the term that children of school age might attend the local parish schools or some school which is equivalent or a continuation of such local school and maintained, conducted and controlled in the same manner in which the local parish schools are maintained and conducted.

After the most careful consideration the court has reached the conclusion that, the intention being beneficent and in aid of education, council intended by the ordinance in question that the children attending the parochial schools strictly speaking, and those which are auxiliary to them, including the convents, should receive the benefit of the reduced fare. The fact that the convents are not maintained for private gain, but are maintained as heretofore stated, aids in reaching the conclusion stated.

A temporary restraining order as prayed for may be entered requiring the defendant to furnish and supply tickets in accordance with the ordinance and rules, to children between the ages of ten and eighteen years attending the academies known as Notra Dame, the Ursulines, Sisters of Mercy, Sacred Heart of Clifton, Cedar Grove, and the High Schools for Boys enumerated in the testimony, who are attending said schools and receiving instruction in elementary, intermediate and high school courses.